DIANE V. GRENDELL, J.
{¶ 1} Defendant-appellant, Big Sky Energy, Inc., appeals from the orders of the Ashtabula County Court of Common Pleas, granting summary judgment in favor of plaintiffs-appellees, Lorrie and Lori Accettola, on their Trespass claim and Big Sky's Conversion counterclaim, and awarding damages and attorney's fees. The issues to be determined in this case are whether a grant of summary judgment for Trespass is appropriate when there is evidence that a defendant left equipment on the plaintiffs' property for several years; whether denial of summary judgment on a counterclaim for Conversion is proper when said equipment is argued to be no longer present on the property where it had been left for several years; whether an award of damages for Trespass is made in error when testimony is presented to a jury regarding the impact of that Trespass on the homeowner; and whether attorney's fees may be awarded for Trespass when no punitive damages were awarded. For the following reasons, we affirm in part and reverse and vacate in part the judgments of the lower court.
{¶ 2} On November 24, 2015, the Accettolas filed a Complaint against Big Sky. They alleged that they were owners of a parcel of property that had been encumbered by an oil and gas lease agreement *216 with Big Sky. Following a proceeding initiated by the Accettolas, the Ashtabula County Court of Common Pleas cancelled the lease on May 8, 2012. According to the Accettolas, Big Sky failed to take certain actions, including removal of equipment, following that judgment. Counts One and Two raised claims for Breach of Fiduciary Duty and Tortious Interference with Business Expectancies. Count Three alleged Trespass for "allowing an invalid lease to remain recorded and allowing equipment to remain on the property without Plaintiffs' permission." Count Four was for Slander of Title.
{¶ 3} Big Sky filed an Answer on December 28, 2015, which raised counterclaims for Breach of Contract and Conversion. The Accettolas filed an Answer to Defendant's Counterclaim on February 19, 2016.
{¶ 4} The Accettolas filed a Motion for Summary Judgment on August 25, 2016. In pertinent part, they requested summary judgment on their claim for Trespass since Big Sky failed to remove equipment, which was used to extract oil and gas from the well, after being asked to do so by the Accettolas following the 2012 lease termination. The Accettolas also requested summary judgment on the Conversion counterclaim.
{¶ 5} The deposition of Lorrie Accettola, one of the owners of the property located at 4755 Hoffman Road in Rock Creek, Ohio, was attached to the Motion. He testified that the property was encumbered by an oil and gas lease with Big Sky, which had operated a gas well located on the property. Around 2011, he spoke to an employee of the Ohio Department of Natural Resources about damage done to his property and access road by Big Sky. He subsequently sought the termination of the lease in the Ashtabula County Court of Common Pleas. After the court terminated the lease in 2012, Accettola wrote numerous letters to Big Sky and contacted ODNR in an attempt to have Big Sky's equipment removed from his property. He testified that he had not prevented Big Sky from accessing his property, although in 2011, he had moved a truck they had brought to the property to service the well and had asked the prosecutor to take action since the truck had been blocking an access road on his property.
{¶ 6} Regarding the Trespass claim, Accettola testified that the trespass continued on a daily basis because Big Sky's equipment was not removed until September of 2015 when the well was plugged.
{¶ 7} Robert Barr, the president of Big Sky, was also deposed. He testified that Big Sky equipment on the Accettolas' property at the time of the termination of the lease in 2012 included a pump jack, tubing, rods, a separator, an oil storage tank, and a gas recording device. When asked what steps were taken in 2013 and 2014 to remove the equipment he said that Big Sky had done "nothing." Barr admitted that Big Sky equipment remained on the property from 2012 to 2015. When asked what prevented removal of the equipment and plugging the well, he cited various causes, including weather, "interference from the landowner," and his lack of insurance, due to issues with his bond in late 2013 following an oil spill and/or failure to file proper documentation. He also testified that the Accettolas "confiscated all the good stuff, and nothing was ever said about anything that's left there." He admitted, however, to receiving letters from the Accettolas regarding making arrangements to remove equipment and plug the well, noting that Big Sky had responded to at least a few of the letters.
{¶ 8} Barr subsequently testified that he "believed" Big Sky sent employees to the Accettolas' property at some point between *217 2012 to 2015, possibly in 2013, to collect equipment. He explained that, on at least one occasion, some of his employees were not permitted on the property and there had been a cement barrier placed on the road.
{¶ 9} Barr explained that Big Sky did remove a "tank" and a "separator" but the Accettolas had "commandeered" a pump jack, which was missing. Other items such as an electric box, lines, and poles were missing. According to Barr, in September 2015, an agreement was entered into with Diamond Oil to plug the well. When Diamond completed that work, some damaged items were recovered from the well.
{¶ 10} Big Sky filed a Response to Plaintiffs' Motion for Summary Judgment on September 22, 2016, which contended, in part, that all equipment was not removed due to the Accettolas' "resistance." The Accettolas filed a Reply.
{¶ 11} On December 14, 2016, the trial court issued a Judgment Entry granting summary judgment in part, ordering judgment in favor of the Accettolas on their Trespass claim and the counterclaims. The Accettolas' Motion was denied as to the remaining claims.
{¶ 12} The Accettolas filed a Notice to "withdraw and dismiss" Counts One, Two, and Four of their Complaint on April 24, 2017.
{¶ 13} A jury trial was held on May 16, 2017, on the issue of damages resulting from the Trespass. Before the trial, the court noted that the issue before the jury "is what damages are the plaintiffs entitled to for the trespass committed by [Big Sky] when they left their equipment on the plaintiffs' property." The following pertinent testimony was presented:
{¶ 14} Lorrie Accettola testified regarding repairs and work that he and his sons completed on his property. Accettola testified regarding work completed to an access road on the property, which was used by Big Sky. Since 2012, Accettola completed additional work, including to "repair damage to the * * * landscaped areas." Accettola and his sons removed utility poles, a pump jack, and removed and replaced areas of dirt where a holding tank had been and where the soil was "contaminated with brine and concrete and oil," some of which occurred when Diamond filled the well in September 2015. Accettola planted around 50 pounds of grass seed in the area around the well. Regarding materials, he stated that the cost was $24 a ton for limestone and $7 a ton for dirt, and a "bit more for the clay." He also testified regarding time expended trying to get the equipment removed from his property.
{¶ 15} Martin Whelan, president of Northeast Ohio Natural Gas, Orwell Natural Gas, and Spellman Pipeline, with experience of 15 years in the oil and gas industry and in remediation, testified but was found by the court not to be an expert witness. Regarding remediation of a well, he testified that generally the well is plugged, and equipment such as tanks, separators, meters, tubing, and flow lines are removed. Dirt is generally replaced and the area is reseeded and replanted. He observed the Accettolas' property and saw some flow lines still in the ground and a "check valve" and pipeline station on the property.
{¶ 16} The jury awarded compensatory damages of $30,000 to the Accettolas. No nominal or punitive damages were awarded. Big Sky filed a June 15, 2017 Motion for Judgment Notwithstanding the Verdict, arguing that no evidence was presented to support the amount awarded by the jury. The trial court overruled this motion.
{¶ 17} Following a hearing, and pursuant to a July 14, 2017 Judgment Entry, the *218 Accettolas were awarded $31,308.53 in attorney's fees.
{¶ 18} Big Sky timely appeals and raises the following assignments of error:
{¶ 19} "[1.] The trial court abused its discretion when it granted partial summary judgment in favor of the Appellees-Plaintiffs.
{¶ 20} "[2.] The jury erred when it awarded the Appellees-Plaintiffs the sum of $30,000.00 in compensatory damages.
{¶ 21} "[3.] The trial court abused its discretion in awarding attorney fees in the amount of $31,308.53."
{¶ 22} In its first assignment of error, Big Sky argues that there was a genuine issue of material fact as to whether it was able to access the Accettolas' property to retrieve its equipment and on the Conversion counterclaim.
{¶ 23} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." "[T]he reviewing court conducts an independent review of the evidence before the trial court and renders a decision de novo, i.e., as a matter of law and without deference to the conclusions of the lower court." (Citation omitted.) Knoefel v. Connick , 2017-Ohio-5642, 94 N.E.3d 17, ¶ 15 (11th Dist.).
{¶ 24} Regarding the Trespass claim, a " 'common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue[.]' " (Citation omitted.) Apel v. Katz , 83 Ohio St.3d 11, 19, 697 N.E.2d 600 (1998).
{¶ 25} As an initial matter, Big Sky does not contest that failure to remove its equipment from the Accettolas' property following the termination of the lease would constitute a trespass. Rather, it asserts that it was unable to remove the items due to the Accettolas' actions. In its argument, it does not provide legal authority or analysis as to the basis for this contention. It is unclear whether Big Sky is contending its "entry" was not unlawful because the equipment remained on the property due to the Accettolas' actions or that the defense of "unclean hands" which was mentioned during summary judgment, applies.
{¶ 26} In any event, upon reviewing the testimony presented at the summary judgment stage,[1] we find the evidence supported a conclusion that Big Sky committed a Trespass. Barr testified that Big Sky had not taken action for almost three years after the lease was terminated in mid-2012, from 2013 through most of 2015, to remove its equipment from the Accettolas' land. This was due to a laundry list of concerns such as "weather" and actions Big Sky had taken which resulted in the company becoming uninsured. There is no question that three years is an unreasonable period of time to delay retrieval of the equipment. While Barr did testify that at some point the Accettolas placed barriers *219 on their property and he "believed" Big Sky employees had not been permitted to enter on an instance in 2013, he did not provide a time period of blanket denial of access and did not specify that he never had an opportunity to remove the equipment. In fact, he testified that some items were removed, showing Big Sky was permitted to access the property. Even if his employees were rejected in some instances, this does not justify years of inaction which he described. Further, even if there was an unsuccessful attempt to retrieve the equipment in 2013, which he "believed" to be the case, this does not justify the failure to remove the items throughout the last several months of 2012.
{¶ 27} Finally, Big Sky's contention that the Accettolas previously contacted the prosecutor to remove their truck that Lorrie Accettola claimed was blocking the access road has no relevance to the present matter, as it related to an incident before the 2012 action occurred and does not support the contention that Big Sky was denied access from 2012 until the present claim for Trespass was filed.
{¶ 28} For these reasons, we find no genuine issue of material fact and that the grant of summary judgment was proper as to the claim of Trespass.
{¶ 29} Big Sky also argues that the trial court erred by granting summary judgment against it on its counterclaim for Conversion.
{¶ 30} "A claimant attempting to establish the tort of conversion must demonstrate the defendant wrongfully exerted control over the claimant's personal property inconsistent with or in denial of his or her rights." Smith v. Evaline's Bridal , 11th Dist. Trumbull No. 2009-T-0014, 2009-Ohio-6520, 2009 WL 4759876, ¶ 17. When conversion is based on unlawful retention of property, it is necessary for the party raising the claim to establish that it "demanded the return of the property from the possessor after the possessor exerted dominion or control over the property" and the possessor "refused to deliver the property to its rightful owner." (Citation omitted.) Fisher v. Clay , 11th Dist. Trumbull No. 2011-T-0031, 2011-Ohio-6007, 2011 WL 5829712, ¶ 22.
{¶ 31} At the summary judgment stage, Barr testified that a pump jack belonging to Big Sky that had been on the Accettolas' property was taken and was not returned, as well as that other items were damaged.
{¶ 32} As was described above, however, there is little evidence that Big Sky made legitimate attempts to retrieve its items or to what extent a demand was made for them. Moreover, Big Sky's decision to leave the equipment on the property constituted a Trespass, as described above. Big Sky failed to show any intention to retrieve the items but now essentially asks that the Accettolas be held responsible for their safekeeping. Based on the record before this court, there was not adequate evidence presented to demonstrate that the Accettolas wrongfully exerted control over Big Sky's equipment, nor that they refused to deliver the items. Further, given the length of time Big Sky essentially abandoned its equipment on the Accettolas' property, even if an item was missing or damaged, we cannot presume that the Accettolas were responsible. Big Sky's conclusory statements that the Accettolas moved or took items is not sufficient to raise an issue of fact that they actually did so.
{¶ 33} The first assignment of error is without merit.
{¶ 34} In its second assignment of error, Big Sky argues that the damages awarded for Trespass were improper as *220 speculative, unsupported by testimony, and unrelated to the act of trespass.
{¶ 35} Big Sky's arguments challenge whether the jury's verdict was supported by the evidence presented at trial. When reviewing the weight of the evidence, the appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Citation omitted.) Eastley v. Volkman , 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. "[I]n order to set aside a jury award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the jury verdict 'is so disproportionate as to shock reasonable sensibilities and indicates that the jury lost its way in assessing compensatory damages.' " (Citation omitted.) Nieminen v. Leek , 11th Dist. Ashtabula No. 2000-A-0043, 2001 WL 1647112, *2 (Dec. 21, 2001).
{¶ 36} In the present matter, it is accurate that there was limited testimony as to specific dollar amounts of losses suffered by the Accettolas relating to the repair of the property and the costs of removing equipment. However, given the totality of the testimony presented and the deference that must be given to the jury, we find that its award was not against the weight of the evidence or otherwise contrary to law.
{¶ 37} Accettola testified as to the amount of work he had to do to clean up the area surrounding the well that had been "contaminated with brine and concrete and oil." He testified regarding the extent of the damage this did to the property. Pictures and testimony demonstrated the poor condition of the property, due to Big Sky's broken and old equipment and the oil spills. Further, Accettola testified regarding the length of time the equipment at issue was present on his property and the three years of his repeated efforts and attempts made to get the equipment removed from the property.
{¶ 38} Although specific values were not provided for items like the cost of materials or removal, we emphasize that damages for noneconomic losses are recoverable in tort cases and encompass any "intangible loss." See R.C. 2315.18(A)(4). Intangible losses can include, but are not limited to, "inconvenience, aggravation, [and] frustration * * *." Favors v. Burke , 8th Dist. Cuyahoga No. 98617, 2013-Ohio-823, 2013 WL 871923, ¶ 7. It is evident from this testimony that intangible losses occurred here, such as the ability to have property that is uncluttered by bulky, old, and damaged equipment, as well as the inconvenience and frustration resulting from spending years attempting to have equipment removed by contacting various entities. Moreover, Accettola testified as to his own time expended attempting to remedy the damages caused to the landscaping and yard located around the well, all of which have some value.
{¶ 39} We do not find that the jury's verdict was "so disproportionate as to shock reasonable sensibilities" or out of line with the evidence presented. As this court has previously held, where evidence is presented to show a pattern of trespass over a period of years, "the jury could grasp the physical damage as well as the fundamental inconveniences, both tangible and aesthetic, suffered by appellees." Secrest v. Gibbs , 11th Dist. Lake No. 2003-L-083, 2005-Ohio-2074, 2005 WL 1007229, ¶ 74. Such was the case here.
{¶ 40} The second assignment of error is without merit.
*221 {¶ 41} In its third assignment of error, Big Sky argues that the award of attorney's fees must be reversed, since there was no bad faith or other improper conduct, and fees are only recoverable in a Trespass action when there is an award of punitive damages.
{¶ 42} Absent an abuse of discretion, an appellate court may not reverse a trial court's judgment on attorney's fees. Lozada v. Lozada, 11th Dist. Geauga No. 2012-G-3100, 2014-Ohio-5700, 2014 WL 7357285, ¶ 65.
{¶ 43} "Ohio has long adhered to the 'American Rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." Wilborn v. Bank One Corp. , 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. However, a prevailing party may be entitled to attorney's fees in instances such as where the losing party "acted in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons." Sorin v. Bd. of Edn. of Warrensville Hts. School Dist. , 46 Ohio St.2d 177, 181, 347 N.E.2d 527 (1976).
{¶ 44} In the present matter, there is no evidence that Big Sky acted in bad faith, nor do the Accettolas argue this to be the case. Rather, the dispute is over when attorney's fees are permissible in a Trespass action.
{¶ 45} Big Sky's contention that attorney's fees cannot be recovered in a Trespass action where punitive damages have not been awarded is supported by the case law of this state. The Supreme Court of Ohio has held, specifically in relation to a Trespass claim, that "[a]ttorney fees are potentially recoverable as a part of compensatory damages when punitive damages have been awarded." Apel , 83 Ohio St.3d at 14, fn.1, 697 N.E.2d 600 ; also Dotson v. Village Res. Dev. Co. , 9th Dist. Lorain No. 98CA007066, 1999 WL 494068, *5 (July 14, 1999) ("[t]he award of attorney fees [in a Trespass claim] is predicated upon a proper award of punitive damages"); Spurlock v. Douglas , 4th Dist. Lawrence No. 02CA19, 2003-Ohio-570, 2003 WL 257371, ¶ 20 (attorney's fees in a Trespass action were recoverable only if there was an award of punitive damages).
{¶ 46} The Accettolas argue that this court held to the contrary in Garcia v. Gillette , 11th Dist. Ashtabula No. 2013-A-0015, 2014-Ohio-1868, 2014 WL 1800429, finding that Ohio law "allows the prevailing party in a trespass action attorney fees as compensatory damages." Id. at ¶ 24. In Garcia , this court did make the foregoing statement and did not qualify it with a finding that such fees can be awarded "when punitive damages have been awarded." However, in its analysis affirming the decision not to award attorney's fees, this court specifically noted as part of its justification that no punitive damages had been awarded. It is unclear why the issue of punitive damages was considered if recovery of attorney's fees was permitted even in the absence of an award of such damages.
{¶ 47} Importantly, we emphasize that in Garcia , this court's statement that "Ohio common law allows the prevailing party in a trespass action attorney fees as compensatory damages" was based on citations to Payne v. Kerr , 4th Dist. Ross No. 1233, 1986 WL 11028 (Sept. 15, 1986), Cleveland, Columbus and Cincinnati R.R. Co. v. Bartram , 11 Ohio St. 457 (1860), and Stevenson v. Morris , 37 Ohio St. 10 (1881), which were decided before Apel . Garcia does not cite to or address the Supreme Court's conclusion in Apel that fees may be awarded as compensatory damages "when punitive damages have been awarded. " (Emphasis added.)
*222 Apel at 14, fn.1, 697 N.E.2d 600. We find no basis for rejecting the Supreme Court's express inclusion of the words "when punitive damages have been awarded." Other appellate districts' holdings support this conclusion, and in applying Apel in Trespass actions, they have concluded that an award of punitive damages is necessary to justify attorney's fees. Spurlock at ¶ 20 ; Dotson at *5. See also Catalanotto v. Byrd , 2017-Ohio-7688, 97 N.E.3d 1016, ¶ 22 (9th Dist.) (applying the same proposition of law).
{¶ 48} Further, in the more recent case of Novy v. Ferrara , 11th Dist. Portage No. 2014-P-0064, 2015-Ohio-4428, 2015 WL 6449136, this court rejected the argument that an award of attorney's fees was proper for a Trespass claim, holding that, "since punitive damages were not warranted, an award of attorney's fees also would not be permissible." Id. at ¶ 26.
{¶ 49} Based on the foregoing, we find that there were no grounds for an award of attorney's fees in this matter. As such, the award of attorney's fees in favor of the Accettolas is reversed and vacated.
{¶ 50} To the extent that the Accettolas argue that sanctions should be awarded because this argument and others were frivolous, we disagree. As Big Sky has raised issues of arguable merit, there is no justification for such an award.
{¶ 51} The third assignment of error is with merit.
{¶ 52} For the foregoing reasons, the judgments of the Ashtabula County Court of Common Pleas are affirmed in part and reversed and vacated in part. Costs to be taxed against the parties equally.
THOMAS R. WRIGHT, P.J., concurs,
COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.
COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.
{¶ 53} I concur in the majority's disposition of the first and second assignments of error. As to the third assignment of error, I disagree with the majority's decision to reverse and vacate the Accettolas' attorney fees award.
{¶ 54} The majority contends that plaintiffs may recover attorney fees in a trespass action only if the court awards punitive damages. They rely on a footnote in an Ohio Supreme Court trespass case, Apel v. Katz , 83 Ohio St.3d 11, 14, fn.1, 697 N.E.2d 600 (1998), which asserts that attorney's fees are appropriate when punitive damages are awarded. In support of this assertion, the footnote cites Zoppo v. Homestead Ins. Co ., 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), and Columbus Finance, Inc. v. Howard , 42 Ohio St.2d 178, 327 N.E.2d 654 (1975), neither of which are actions in trespass. This footnote is dictum to Apel 's holding affirming the lower court's punitive damages award. Thus, Apel did not overrule the Ohio Supreme Court's decision in Cleveland, C. & C.R. Co v. Bartram , 11 Ohio St. 457 (1860), which held that a court may award attorney fees when it awards compensatory damages.
{¶ 55} Following the Bartram precedent, both this court and other districts have recognized that a plaintiff in a trespass action may receive attorney fees as compensatory damages. See Garcia v. Gillette , 11th Dist. Ashtabula No. 2013-A-0015, 2014-Ohio-1868, 2014 WL 1800429 ("Ohio common law allows the prevailing party in a trespass action attorney fees as compensatory damages."); see also Payne v. Kerr , 4th Dist. Ross No. 1233, 1986 WL 11028 (Sept. 15, 1986).
{¶ 56} For this court to limit attorney fees solely to punitive damages awards, the Ohio Supreme Court must overrule its *223 decision in Bartram . It has not. Thus, I believe this court must affirm the trial court's judgment awarding attorney's fees to the Accettolas.
{¶ 57} I respectfully concur in part and dissent in part.

To the extent that testimony presented at the damages hearing is cited by Big Sky in relation to the validity of the grant of summary judgment, it is inapplicable since it was not before the lower court at the time summary judgment was granted.